Docket No. 103272.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANTONIO D. PIERCE, Appellant.

*Opinion filed October 18, 2007.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, and Karmeier concurred in the judgment and opinion.

Justice Kilbride specially concurred, with opinion.

## OPINION

In this case, we must determine whether the modified jury instructions given at defendant's trial accurately stated the law when they defined the offense of theft from the person to include a taking from the "presence" of the person. To make this determination, we must decide whether one commits the offense of theft "from the person" in Illinois when he steals property that is not in physical contact with the person. The appellate court held that one commits the offense of theft from the person even if the property is not in physical contact with the person from whom it is taken. 367 Ill. App. 3d 203. For the reasons that follow, we affirm the judgment of the appellate court.

Background

On September 13, 2004, Robert Gallaher was sitting at the bar in the Silver Moon Tavern in Quincy, Illinois, drinking beer. Gallaher had placed $50 on the bar in front of him and, after he paid for his drinks, several bills remained on the bar. Gallaher testified he had his hand on the money while he sat at the bar.

Defendant entered the Silver Moon and walked up to Gallaher, the only patron in the tavern. Gallaher testified that defendant offered to sell him cigarettes, but he declined. The two then engaged in conversation for several minutes. At one point, Gallaher removed his hand from the money to light a cigarette. Defendant then grabbed the money and ran out of the tavern. The bartender, Linda Sheehan, essentially confirmed Gallaher's testimony. A surveillance tape from the bar also confirmed the events.

At trial, in the circuit court of Adams County, defendant denied taking Gallaher's money. He testified that he had never seen Gallaher or Sheehan before and that he had never been in the Silver Moon Tavern. Defendant claimed to have been in Joliet at the time of the theft.

At the jury instruction conference, the State proffered modified versions of Illinois Pattern Jury Instructions, Criminal, Nos. 13.09 and 13.10 (4th ed. 2000) (hereinafter IPI Criminal 4th). The State's proffered modification added the phrase "or presence" to the two instructions. The modified version of IPI Criminal 4th No. 13.09 read:

> "A person commits the offense of theft from the person when he knowingly obtains unauthorized control over the property by taking said property from the person *or presence* of another and intends to deprive the owner permanently of the use or benefit of the property." (Emphasis added.)

The modified version of IPI Criminal 4th No. 13.10 read:

> "To sustain the charge of theft from the person, the state must prove the following propositions: First proposition, that Robert Gallaher was the owner of the property in question, and second proposition, that the defendant knowingly obtained unauthorized control over the property in question, and third proposition, that the defendant intended to deprive the owner permanently of the use or benefit of the property in

-2-

question, and fourth proposition, that the defendant took the property in question from the person *or presence* of Robert Gallaher." (Emphasis added.)

The court gave the modified instructions to the jury over defendant's objection. Also, the trial court refused defendant's request to instruct the jury on the lesser offense of misdemeanor theft, *i.e.*, theft not from the person. The jury found defendant guilty of theft from the person and he was sentenced to six years' imprisonment.

The appellate court affirmed. 367 Ill. App. 3d 203. Looking to the plain language of the statute, the court found that "[a] reasonable reading of the statute applies to the situation here. The money was directly in front of the victim, and the money was snatched just after the victim removed his hands from it." 367 Ill. App. 3d at 206.

The appellate court rejected defendant's argument that, pursuant to *People v. Williams*, 42 Ill. App. 3d 134 (1976), property must be taken from the victim's body or clothing in order to be theft from the person. Instead, the court relied on three cases decided after *Williams*: *People v. Harrell*, 342 Ill. App. 3d 904 (2003), *People v. Sims*, 245 Ill. App. 3d 221 (1993), and *People v. Jackson*, 158 Ill. App. 3d 394 (1987). 367 Ill. App. 3d at 207-09. Each of these cases held that the property need not be in contact with the victim to constitute theft from the person.

The appellate court concluded that theft from the person includes the taking of property from the person "or presence" of another and, consequently, the trial court did not abuse its discretion when it instructed the jury using the modified IPI instructions. We thereafter granted defendant's petition for leave to appeal. 210 Ill. 2d R. 315.


Analysis

The function of jury instructions is to provide the jury with accurate legal principles to apply to the evidence so it can reach a correct conclusion. *People v. Hopp*, 209 Ill. 2d 1, 8 (2004). In a criminal case, fundamental fairness requires that the trial court fully and properly instruct the jury on the elements of the offense, the burden of proof, and the presumption of innocence. *People v. Williams*, 181 Ill. 2d 297, 318 (1998).

This case requires us to determine whether the modified jury instructions defining theft from the person to include a taking from the "presence" of another accurately stated the law. Although the giving of jury instructions is generally reviewed for an abuse of discretion, when the question is whether the jury instructions accurately conveyed to the jury the law applicable to the case, our review is *de novo*. *People v. Parker*, 223 Ill. 2d 494, 501 (2006).

The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Pack*, 224 Ill. 2d 144, 147 (2007). The language of the statute is the best indication of legislative intent, and we give that language its plain and ordinary meaning. *Pack*, 224 Ill. 2d at 147. In addition, we must consider the entire statute and interpret relevant provisions together. *People v. Cordell*, 223 Ill. 2d 380, 389 (2006). We should not construe words and phrases in isolation. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007).

The Criminal Code of 1961, under the heading of "Offenses Directed Against Property," defines theft as follows:

"(a) A person commits theft when he knowingly:

(1) Obtains or exerts unauthorized control over property of the owner; [and]

* * *

(A) intends to deprive the owner permanently of the use or benefit of the property[.]

* * *

(b) Sentence.

* * *

(4) Theft of property from the person not exceeding $300 in value, or theft of property exceeding $300 and not exceeding $10,000 in value, is a Class 3 felony." 720 ILCS 5/16–1 (West 2004).

Initially, defendant contends that the trial court erred in giving the modified jury instructions, which included the phrase "or presence," because theft requires a taking from the actual person of the victim. According to defendant, because the theft statute does not include the

-4-

phrase "or presence," it must be construed to exclude takings from a person's presence.

There is a split in Illinois, as well as other jurisdictions, as to whether the phrase "from the person," when used with respect to the offense of theft, includes a taking from the "presence" of that person. One line of cases holds that, with respect to theft or larceny from the person, the property taken must be in contact with the victim. These cases rely on the purpose behind the original larceny from the person statute, Statutes of 8 Elizabeth (8 Eliz. c.4 §2 (1565)),[1] which was to prevent pickpocketing and purse snatching. This meant the property had to be connected to or in contact with the victim at the time of the theft. See, *e.g.*, *People v. Williams*, 42 Ill. App. 3d 134 (1st Dist. 1976); *Terral v. State*, 84 Nev. 412, 413-14, 442 P.2d 465, 465-66 (1968).

Another line of cases holds that, as long as the property is in the person's possession or within the immediate custody and control of the person, a taking is sufficient to constitute theft from the person. These cases reason that, at common law, the phrase "from the person," when used with respect to robbery, included the presence of the person from whom the property was taken. In addition, at common law, theft or larceny was considered a lesser-included offense of robbery. Thus, because the phrase "from the person" in the context of robbery included a taking from the presence of another, the phrase must have had the same meaning in connection with theft. See, *e.g.*, *People v. Harrell*, 342 Ill. App. 3d 904 (2d Dist. 2003); *People v. Sims*, 245 Ill. App. 3d 221 (3d Dist. 1993); *People v. Jackson*, 158 Ill. App. 3d 394 (5th Dist. 1978); *In re D.D.S.*, 396 N.W.2d 831, 832-33 (Minn. 1986); *State v. Shepard*, 726 A.2d 1138, 1140-41(R.I. 1999). In both lines of cases, the courts look to the common law, yet draw different conclusions from it. See generally J. Pearson, Annotation, *What Constitutes Larceny "From a Person,"* 74 A.L.R. 3d 271 (1976).

---

[1]This statute was passed in the sixteenth century and was the first statute that provided for a greater punishment for larceny from a person. J. Pearson, Annotation, *What Constitutes Larceny "From A Person,"* 74 A.L.R. 3d 271, 276 (1976).

This court has long held the view that, at common law, theft or larceny was a lesser-included offense of robbery. In *Hall v. People*, 171 Ill. 540, 542 (1898), we stated: "The only difference between private stealing from the person of another [larceny or theft] and robbery lies in the force or intimation used." We further noted that "[t]he two crimes approach each other so closely that cases may arise where it may be doubtful upon which side of the line they should fall." *Hall*, 171 Ill. at 543-44. See also *People v. O'Connor*, 310 Ill. 403, 407 (1923).

The view that larceny from the person is a lesser-included offense of robbery finds support among numerous historical scholars. See William Blackstone, 4 Commentaries *241 (robbery is "[o]pen and violent larceny from the person"); 5 Tucker, Blackstone's Commentaries With Notes *241 (1803) (the only recognized difference between robbery and theft from the person is the use of force); 2 E. East, Pleas of the Crown §124, at 707 (1803) (robbery is a species of "aggravated larceny"); 2 W. Russell & C. Greaves, Crimes and Misdemeanors (1845) ("robbery is an aggravated species of larceny").

More recent authorities have expressed the same view. See 3 W. LaFave, Substantiative Criminal Law §20.3(a), at 172-73 (2d ed. 2003) ("Robbery, a common-law felony, and today everywhere a statutory felony regardless of the amount taken, may be thought of as aggravated larceny"); 3 C. Wright, Federal Practice & Procedure §515, at 22 (2d ed. 1982) ("Robbery necessarily includes larceny"). See also *Carter v. United States*, 530 U.S. 255, 278-79, 147 L. Ed. 2d 203, 222, 120 S. Ct. 2159, 2174 (2000) (Ginsburg, J., dissenting, joined by Stevens, Souter, and Breyer, JJ.) ("Larceny was therefore a lesser included offense of robbery at common law"; "The elements of common-law larceny were also elements of robbery. *** Unlike larceny, however, robbery included one further essential component: an element of force, violence, or intimidation. See 4 Blackstone 242 ('[P]utting in fear is the criterion that distinguishes robbery from other larcenies.')").

Having determined that, at common law, theft from the person was a lesser-included offense of robbery, the relevant question becomes, What did the term "from the person" mean at common law?

We answered this question in *People v. Braverman*, 340 Ill. 525 (1930). In *Braverman*, this court held:

> "[The terms] 'taking from the person of another,' as used in the common-law definition of robbery, were not restricted in their application to those cases in which the property stolen was in actual contact with the person of the one from whom it was taken, but included within their meaning the taking, by force or intimidation from the presence of the person assaulted, of property which either belonged to him or was under his personal control and protection." *Braverman*, 340 Ill. at 530.

This court then interpreted the robbery statute in conformity with the common law definition, finding that a taking "from the person" included a taking from the presence of another when the property either belonged to that person or was under his control and protection. *Braverman*, 340 Ill. at 530. See also *People v. O'Hara*, 332 Ill. 436, 440 (1928) ("But if property was taken feloniously, with force and violence or by putting in fear, in the presence of the owner, it was in legal contemplation a taking from his person (1 Hale's P.C. 532; *Rex v. Francis*, 2 Strange, 1015.) 'And so it is whether the taking be strictly from the person of another or in his presence only, \*\*\*.' (4 Blackstone's Com. 243.)"); *O'Donnell v. People*, 224 Ill. 218, 225 (1906) ("But the taking from the person is not understood to mean that the goods are actually on the person, in a strict sense"; "It is not necessary that the taking should be immediately from the person" (emphasis omitted)).

*Braverman* held that, at common law, the phrase "from the person of another" included "presence." As noted, this court has also held that, at common law, larceny was a lesser-included offense of robbery. It follows, therefore, that at common law the meaning of the phrase "from the person" included "presence" with respect to both larceny and robbery. See also J. May, Law of Crimes §294, at 288 (3d ed. 1905) (discussing the offense of "Larceny from the Person" and stating, "And a thing is said to be on the person if it is attached \*\*\* or is otherwise so related to the person as to partake of its protection"); R. Perkins & R. Boyce, Criminal Law, ch. 4, at 342 (3d ed. 1982) (discussing the offense of "Larceny from the Person" and stating, "property may be under the protection of the person although not

actually 'attached' to him," citing 2 Bishop, New Criminal Law §898 (8th ed. 1892) ("The thing taken must be under the protection of the person, but it need not be attached thereto")). See also 2 W. Burdick, Law of Crime §557, at 332 (1946) ("Under the statutes, the larceny must be 'from the person', yet this is construed to include from one's presence providing the property is at the time under one's protection").

Defendant contends, however, that because the Criminal Code of 1961 superseded all common law definitions, we can no longer look to common law to interpret the meaning of "from the person" in the current theft statute. In support of his position, defendant points to section 1–3 of the Criminal Code of 1961, which provides: "No conduct constitutes an offense unless it is described as an offense in this Code or in another statute of this State." 720 ILCS 5/1–3 (West 2004). Defendant also points to the committee comments to this provision, which state: "The purpose of this section is to complete the process of replacing the common-law definitions of offenses with statutory definitions ***." 720 ILCS Ann. 5/1–3, Committee Comments–1961, at 12 (Smith-Hurd 2002).

We are unpersuaded by defendant's argument. Defendant ignores other comments to section 1–3 that specifically state:

> "However, the supersession of all common-law definitions of particular offenses does not mean that the large mass of interpretative rules developed under the common law is superseded: these rules are a highly valuable part of our criminal law, and their effective replacement by statutory law would be exceedingly difficult." 720 ILCS Ann. 5/1–3, Committee Comments–1961, at 13 (Smith-Hurd 2002).

Defendant's conduct–the taking of another's property with intent to deprive the owner of permanent use–constitutes the offense of theft as described in section 16–1 of our Criminal Code. The question here is the meaning of a particular phrase in the definition of that statutory offense, *i.e.*, "from the person." As the committee comments acknowledge, the vast array of case law and legal authorities that have considered the common law need not be discarded when interpreting the meaning and scope of statutory offenses. As a result, we hold that the common law definition of "from the person," whether considered in connection with the statutory offense of theft or of robbery, is still relevant. Thus, our discussion in *Braverman*, defining the phrase

"from the person" to include the "presence" of the person, remains viable law and is applicable to the theft statute today.

Defendant next argues that *Braverman*'s definition of "from the person" is no longer applicable because the legislature amended the robbery statute in 1961 to include the phrase "or presence" but did not similarly amend the theft statute. Defendant contends that, by adding the phrase "or presence" to the robbery statute, the legislature intended that the phrase "from the person" no longer have the meaning described in *Braverman*. Defendant argues that the phrase "from the person" must have a narrower meaning, which no longer includes "or presence." Otherwise, defendant maintains, there would have been no reason for the legislature to add "or presence." Moreover, defendant contends that, because the legislature did not similarly amend the theft statute, the phrase "from the person" must have the narrower meaning. We reject this argument.

The Criminal Code of 1961 provides: "A person commits robbery when he or she takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18–1 (West 2004). The committee comments to the 1961 amendment, which added "or presence" to the robbery statute, noted: " '. . . or presence' is added to incorporate the court's holding in People v. Braverman, 340 Ill. 525, 173 N.E. 55 (1930)." 720 ILCS Ann. 5/18–1, Committee Comments–1961, at 6 (Smith-Hurd 2003).

As noted by the committee comments, the legislature did not intend to make any change in the law when it amended the robbery statute. It was merely incorporating the holding of *Braverman*. 720 ILCS Ann. 5/18–1, Committee Comments–1961, at 6 (Smith-Hurd 2003) ("No change is intended"). Although it is a canon of statutory construction to avoid rendering words in a statute superfluous, here the legislature itself admitted that "or presence" was added to the robbery statute simply to underscore that the meaning of the phrase "from the person" included the taking of property that is in the possession of or under the control and protection of the victim. The legislature did not change the meaning of the phrase "from the person" adopted by *Braverman*.

Discussing a similar situation, the Minnesota Supreme Court held:

-9-

"While the legislature added the phrase 'or in the presence' in the robbery statute in order to make it clear that a robbery was committed if property was taken by the use or threat of force from the person of another or in his presence, the legislature's failure to use the phrase 'or in the presence' in [the theft from a person statute], does not mean that the legislature intended to exclude theft of property under the immediate control of the victim from the offense of theft from the person. There was simply no need to add the phrase 'or in his presence' in the theft statute because this court had already ruled that theft 'from the person' extended 'to every case of stealing, where the property stolen is on the person, or in the immediate charge and custody of the person from whom the theft is made.' [Citation.]" *In re D.D.S.*, 396 N.W.2d at 832-33.

We agree with the reasoning of the Minnesota court. While our legislature could have included the phrase "or presence" in the theft statute, it was not necessary to do so because, in Illinois, the well-defined meaning of "from the person" includes a taking from the presence of another.

Conclusion

We hold that the offense of theft from the person includes the taking of property that is in the possession of or under the control and protection of the victim. Thus, the trial court did not err in giving the modified jury instructions. Accordingly, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE KILBRIDE, specially concurring:

I specially concur because the majority opinion tacitly overlooks critical limitations expressed in *People v. Sims*, 245 Ill. App. 3d 221 (3d Dist. 1993), and *People v. Harrell*, 342 Ill. App. 3d 904 (2d Dist. 2003). See slip op. at 5. *Sims* and *Harrell* narrowly apply the statutory phrase "from the person" in limited situations. Although ostensibly agreeing with *Sims* and *Harrell*, the majority adopts a broader interpretation without addressing its implicit expansion of the scope of that phrase.

-10-

*Sims* expressly held that, in addition to property taken from the victim's person, theft from the person included takings "when the *victim has been detained or searched* \*\*\* or when the *victim's privacy has been directly invaded* at the time the property is taken [citation]." (Emphases added.) *Sims*, 245 Ill. App. 3d at 224. Applying that rule, the *Sims* court reversed the defendant's conviction, finding that theft from the person did not include the taking of the victim's purse from her shopping cart while she was standing a few feet away, unaware of the theft. In reaching this conclusion, the court factually distinguished *People v. Jackson*, 158 Ill. App. 3d 394 (5th Dist. 1987), where the victim was pushed against his car and searched before the defendant removed a wallet and other property from inside the car.

Expressly relying on the rationale in *Sims*, the *Harrell* court reached a different result, upholding the defendant's conviction. *Harrell* concluded that the facts were closer to those in *Jackson* than to *Sims*, because "the victim's privacy was directly invaded" in *Harrell*. *Harrell*, 342 Ill. App. 3d at 909. The court concluded the victim "was obviously aware of the theft" when defendant reached around her to take her purse from the shopping cart. *Harrell*, 342 Ill. App. 3d at 909.

Accordingly, in both *Sims* and *Harrell*, when the taking is not from the victim's actual person the key to the analysis is whether the victim had been detained or searched or suffered an invasion of privacy. Unfortunately, without discussing these analytical limitations, the majority adopts a broader interpretation of the victim's "presence," including all takings of property under the victim's "control and protection." Slip op. at 7. Although that interpretation could presumably produce a different outcome in *Sims*, the majority does not broach this possibility nor does it expressly reject the limitations adopted in *Sims* and *Harrell*. Therefore, because I believe these considerations merit examination by this court, I cannot fully join the majority opinion.

Nonetheless, I agree with the majority that defendant was properly convicted of theft from the person even under the analysis in *Sims* and *Harrell*. Defendant directly invaded the victim's privacy by taking money from the bar when the seated victim removed his hand to light a cigarette. Thus, I specially concur in the majority opinion.